[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING RESPONDENT'S MOTION TO VACATE OTC
On May 25, 1999, the court (Swienton J.) granted the Department of Children and Families (DCF) an ex parte order of the temporary custody of the minor children Ashleigh D., Taylor C. and Quentin V. At a preliminary hearing on May 28, 1999, the court (Keller, J.) confirmed the OTC. Two of the respondent parents, Rosellen V. and Robert V., attended that hearing and were represented by their respective counsel.[1] At the May 28 proceeding, both of these parents waived the statutory right to challenge the order of temporary custody at a contested evidentiary hearing.
On June 18, 1999, Rosellen V. filed a "Motion to Vacate Order of Temporary Custody." The respondent claimed therein that there is . . . no evidence of imminent danger to the children if they were returned to the Respondent Mother's care . . ." and that ". . . the circumstances that had existed prior to the granting of the order of temporary custody no longer exist. . ."
A contested hearing on the respondent's motion was held on July 16, 1999, July 19, 1999 and July 23, 1999. Rosellen V. and Robert V. attended throughout the proceeding and were represented by their attorneys. Counsel for DCF and the minor children also participated in the proceeding.
 FACTUAL FINDINGS
The following facts were proven by a preponderance of the evidence at the hearing:
The respondent Robert V. is the biological father of Quentin V. and the stepfather of Ashleigh D. and Taylor C. He is married to Rosellen V., the biological mother of all three children.
Ashleigh is nine years old, and her sister Taylor is seven. Quentin is approximately nine weeks old, his date of birth being May 13, 1999.
On the morning of May 21, 1999, Robert V. went to Ashleigh's elementary school in East Hartford in response to a complaint by the child's teacher that Ashleigh had failed to complete her spelling homework. At the school, he took the child into a CT Page 9712 bathroom and assaulted the child several times with a belt. School personnel intervened, separated Ashleigh from her stepfather, and notified police and DCF. The child sustained visible bruising on her lower back and right leg. Kelly McVey, a DCF program supervisor, observed the child's injuries shortly after 5:00 p. m. on May 21. Per Ms. MeVey, the mark on Ashleigh's back extended from ". . . the lower left portion of her back to the mid-portion of her back." (Petitioner's Exhibit 1, Page 2). The affidavit which Ms. McVey prepared concerning her observations also noted:
 "Marks on her right leg were on the inner part of her right thigh, and around the whole outer upper thigh. The marks were red, bruised and in a linear fashion. The marks appeared to be consistent with being hit hit with a belt. Ashleigh reported being sore, and was visibly in pain when I would rub her back and hug her." (Petitioner's Exhibit 1, Page 2).
Ashleigh's injuries were observed by the DCF supervisor more than six hours after they were inflicted. The court accepts Ms. McVeys written and oral testimony about the nature and extent of the child's injuries as highly credible fact.
Robert V. was arrested at the scene by a police officer who responded to the school. He called his wife, who had been home caring for newborn Quentin, from the police station. Rosellen V. subsequently made trips to police headquarters, where she secured Robert V.'s release on bond, and to Ashleigh's school. During the afternoon on May 21, the mother met with a DCF social worker at the school. The worker informed Rosellen V. that the agency was taking custody of all three children because DCF did not believe that the respondent could protect them from Robert V.
The incident in May was not the first time that Robert V. struck his children with a belt. Rosellen V. testified at hearing that her husband hit both Ashleigh and Taylor on the legs with his belt in January 1999, when both children were misbehaving at home.
According to DCF. Supervisor McVey, Ashleigh and Taylor both told her on May 21 that their stepfather hits them often as a means of discipline. She noted in her affidavit:
"They report that they are hit with a belt and that CT Page 9713 Robert has left marks on them before. Taylor reported that she is not hit as hard as Ashleigh, as Robert likes her better. Ashleigh confirmed this, stating that Robert hates her. I asked the children where their mother was during this? They both stated she was home, and at times she attempted to stop Robert from hitting them. The children reported that their parents would then fight and their mother would go into her room and cry." (Petitioner's Exhibit 1, Page 2).
Ashleigh indicated to Ms. McVey that she was afraid of Robert V. and did not wish to return home for that reason. (Petitioner's Exhibit 1, Page 2 and direct testimony of Kelly McVey.)
The court observed Robert V.'s physical stature during the hearing. He is tall and appears to have a powerful physique. Robert V. admitted to DCF social worker Deana Miranda that he had previously been incarcerated for several years on sexual assault and unlawful restraint charges.
Court-ordered reunification steps were agreed upon by the parties at the hearing conducted by Judge Keller on May 28, 1999. (Respondent Mother's Exhibit 1). Robert V. and Rosellen V. thereafter engaged in counseling with Douglas Van Velhuisen, a marriage and family therapist intern at an agency known as "The Bridge"[2] in West Hartford. Mr. Van Velhuisen, an ordained minister for 19 years, has been pursuing a pastoral counseling degree at St. Joseph College. As part of this program, he is required to perform 500 hours of clinical internship in the area of marriage and family therapy. He is fulfilling this expectation at "The Bridge," where he has a caseload of 15 clients, and is supervised by the agency's clinical director. He has completed more than 400 hours of his internship. In his capacity as a minister, Mr. Van Velhuisen also counseled numerous couples and families. He began counseling with Robert V. and Rosellen V. on June 2, 1999, and saw them a total of six times.
Mr. Van Velhuisen observed that the respondents communicated well and were respectful to each other. He found them to be affectionate and courteous to each other, and did not sense that either spouse was fearful of the other. The counselor also believed that the respondent parents were open and willing to talk with him about issues. It was his opinion that the children would not be at risk if returned home. CT Page 9714
However, Mr. Van Velhuisen also testified that Robert V. and Rosellen V. both believe that domestic violence is not an issue which they need to address. He said that because of the respondents' attitude that this was not a problem, counseling would not help them to make progress in the domestic violence area.
The respondents terminated their relationship with Mr. Van Velhuisen after the DCF social worker informed them that their sessions at "The Bridge" would not fulfill the court-approved expectations. DCF believed that Mr. Van Velhuisen's qualifications were insufficient, and also feared that one counselor could not objectively provide couples counseling for the parents, and family therapy involving the children and the respondents. DCF. Supervisor Elizabeth Rosa denied a request from mother's counsel in late June that "The Bridge" conduct a "family assessment during which the interaction between the children and the respondents could be observed. Neither Ms. Rosa, nor DCF social worker Deana Miranda, ever spoke with Mr. Van Velhuisen's clinical supervisor at "The Bridge" to express their concerns about the therapist's qualifications, or to clarify with that agency DCF's position about what services "The Bridge" should, or should not, provide to the respondents. The petitioner did not inquire if employees of "The Bridge" other than Mr. Van Velhuisen could provide some of the other services mandated by the court. DCF claimed at hearing that it did not object to the respondents continuing in joint couples counseling at the Bridge. However, Mr. Van Velhuisen indicated that because he did not want to harm his patients' status with the agency and the court, he advised the respondents to seek treatment from DCF-approved sources, and ended his therapy with them. Since then, the parents have had difficulty obtaining replacement counseling and rehabilitative programs due to waiting lists, insurance problems and financial reasons. Ms. Miranda did give the respondents the names and addresses of other agencies and individuals that they could contact for services. However, the evidence which the court heard in this proceeding suggests that DCF acted precipitously in its assessment of Mr. Van Velhuisen's credentials, and the services which "The Bridge" might have provided to the parties in this matter.
While this court does not agree with Mr. Van Velhuisen's opinion (and the opinion of the respondent's pastor) that the children would not be at risk if returned at this time to the parental home, it found his testimony to be sincere, truthful, thoughtful CT Page 9715 and professional. The court was impressed with both his competence in the area of marriage and family therapy, and his commitment to assist the respondents. Also, the court believes that he had established a bond of trust with Robert V. and Rosellen V., and may have been very helpful to them if his therapeutic relationship had continued. Although this court appreciates some of DCF's reservations about the efficacy of "all-inclusive" therapy at the Bridge, the court also finds that the petitioner did not appropriately communicate those concerns to either the therapist, his supervisor, or the respondents. The court believes that the DCF representatives should have conferred with Mr. Van Velhuisen and his clinical supervisor to discuss the intern's credentials and supervision, to express their concerns about the "multiple therapy issues" and to define the nature and direction of the ongoing therapy at "The Bridge," and the manner in which it could best assist Robert V. and Rosellen V. to meet court-approved expectations. The petitioner's failure to do this resulted in the termination of the respondent's existing treatment, and has left them drifting aimlessly without any well-defined therapeutic program in place at a highly critical time in this case.
 ADJUDICATION
Although evidence pertaining to ancillary issues-such as the respondent's therapy at "The Bridge"-was presented at this hearing, the main issue was whether or not the OTC should be vacated because of a change in circumstances which indicated that the children are no longer in immediate danger from their surroundings. Having carefully considered all of the evidence adduced at hearing, the court concludes that the respondent mother did not prove this by a preponderance of the evidence.
The respondent Robert V. struck his nine-year-old stepchild Ashleigh several times with a belt on May 21. He was angry about a complaint that the child had failed to do homework, and about her attitude when he questioned her about this at the school. The court finds the manner in which Robert V. struck the child, and the fact that his actions took place in near proximity to school officials, to be compelling evidence of his uncontrollable anger and irrational judgment at that time. The injuries which he inflicted upon the child were visible and painful to her more than six hours later when Ashleigh was comforted by DCF supervisor Kelly McVey. Ashleigh and Taylor were also struck with a belt by Robert V. in January. Rosellen V. knew about this CT Page 9716 earlier incident. Both children complained to DCF about being hit by their stepfather on other occasions, and Ashleigh was visibly frightened of her stepfather on the evening of May 21. The court finds that Robert V.'s actions on May 21 extended far beyond the pale of acceptable parental discipline. It was proven by a preponderance of the evidence that he physically abused Ashleigh on that date. The court further finds that the violent anger and poor judgment which the stepfather demonstrated on May 21, and his prior acts of domestic violence toward Ashleigh and Taylor, are proof that he poses an immediate risk to the physical safety of all three children. That risk presently exists, and has not been ameliorated by counseling, or other treatment, since May 21.
Rosellen V. and her husband both indicated to Mr. Van Velhuisen that they do not believe domestic violence is a problem for them. Accordingly, the family therapist intern indicated that neither respondent could make progress in addressing this issue, because they do not acknowledge that it exists. During her testimony at this hearing, Rosellen V. also told this court there was no domestic violence, and she indicated that Robert V.'s action on May 21 constituted an isolated incident. The court does not accept the respondent mother's testimony in this regard. The court finds the mother's inability to recognize Robert V.'s assaults upon Ashleigh and Taylor as acts of domestic violence to be evidence of a tendency on her part to deny or minimize Robert V.'s anger and the negative impact which it has on these children. The mother's actions in immediately securing Robert V.'s release on bail — particularly when she was aware of her husband's prior use of a belt to strike both children in January — are further proof of this. The court also finds that because the mother does not yet sufficiently recognize her husband's anger, and the safety risk it poses for all of the children, she cannot adequately protect the children.
Based on all of the forgoing, the court finds that respondent mother has not proven by the requisite preponderance of the evidence that the children are no longer in immediate danger and/or that there has been a material change in circumstances which mandates that the court should vacate the OTC. Accordingly, the respondent's motion is hereby DENIED.
At the conclusion of the evidentiary hearing in this matter, the court addressed some of the ancillary issues which had been raised by counsel during the proceeding. The court suggested that the mother should have more extensive contacts with her infant CT Page 9717 son, Quentin. It also suggested that both parents should immediately receive well-defined reunification services which will facilitate their compliance with the court's expectations. At a minimum, the court believes that Robert V. should successfully complete anger management and parenting classes, and that the mother should successfully complete counseling and/or educational programs which will enhance her parenting skills and enable her to understand the difference between positive disciplinary techniques and domestic violence. The court also indicated that the respondents and subject children should be evaluated by a competent professional to assess the issue of domestic violence and its impact on the family unit. The court directed that the parties meet to address these concerns and effectuate increased visitation and a plan for services. It is imperative that DCF immediately facilitate appropriate reunification services for both respondents. The petitioner is ordered to file a written report concerning its efforts to do so at the in-court judicial review which has been scheduled by the court service officer for August 10, 1999 at 3:30 p. m.
The court further orders that all counsel attend a judicialpre-trial conference which will be conducted by the undersigned in chambers at this court on August 19, 1999 at 9:OO a.m.
SO ORDERED.
BY THE COURT:
Dyer, J.